982 F.2d 530
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Angel SOLIS-SERRANO, Defendant-Appellant.
 No. 92-2095.
 United States Court of Appeals, Tenth Circuit.
 Dec. 11, 1992.
 
 Before SEYMOUR, STEPHEN H. ANDERSON and BALDOCK, Circuit Judge.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Angel Solis-Serrano was convicted, after a jury trial, of possession with the intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). He appeals the denial of his motion to suppress evidence which was found in his vehicle during its stop at a border patrol checkpoint, and statements made at that time allegedly in violation of his Fifth Amendment right to remain silent, under the rules set forth in Miranda v. Arizona, 384 U.S. 436 (1966). He also contends that the district court committed reversible error when it permitted the government to impeach Solis-Serrano by the admission into evidence of two prior felony convictions. For the following reasons, we affirm.
 
 I.
 
 3
 The salient facts are as follows. On September 13, 1991, Solis-Serrano drove a 1971 Volkswagen Beetle into the United States Border Patrol Checkpoint on Highway 185 in Dona Ana County, New Mexico. At the primary inspection area United States Border Patrol Agent Kevin Thatcher asked Solis-Serrano the usual questions relating to citizenship and immigration status. During that routine questioning Agent Thatcher observed that Solis-Serrano was nervous; that there was a sweet smell coming from inside the vehicle which the agent recognized as air freshener often used to mask the odor of some types of contraband; that some new carpeting had been installed, and that the rear compartment appeared to be raised, indicating the presence of a false compartment. Based on these facts, Agent Thatcher asked for and received consent from Solis-Serrano to use a dog to inspect the vehicle, and then referred the vehicle to the secondary inspection area. The vehicle remained in the primary inspection area approximately one minute.
 
 
 4
 At the secondary inspection area, the vehicle's engine was turned off and then started again. The agents believe that Solis-Serrano was trying to leave the checkpoint, and shouted to him to stop. Solis-Serrano complied, and stepped out of the vehicle. A trained narcotics canine then inspected the exterior of the vehicle and alerted to the right rear corner, indicating to the handler that the dog had come as close as he could to one of the four odors he was trained to detect. The agent then tapped where he thought the compartment was, and heard a dull thud sound, indicating the presence of some type of contents in the compartment. Subsequently, the agent removed part of the new carpet inside the vehicle, and exposed the compartment, from which 71 pounds of marijuana was subsequently extracted.
 
 
 5
 After the trained dog had alerted on the vehicle, the border patrol agents placed Solis-Serrano under arrest and escorted him inside the trailer at the checkpoint. He was then advised of his Miranda rights. Solis-Serrano indicated that he understood those rights, and initially stated that he did not wish to speak with the agents. After about five minutes, however, Solis-Serrano initiated conversation. He stated that he wanted to speak with the agents. One of the border patrol agents then reread the renunciation portion of the form which the agents use to advise and obtain waivers of Miranda rights. Solis-Serrano then waived his rights and made incriminating statements.
 
 
 6
 At trial, Solis-Serrano testified in his own behalf. On cross examination, the government asked him if he had a conviction for possession of narcotics for sale. He denied such a conviction. The government then moved to admit into evidence a certified copy of the judgments in two prior felony convictions. The district court permitted the evidence to come in, over a limited objection by defense counsel.
 
 II.
 
 7
 Solis-Serrano makes multiple arguments with respect to the district court's denial of his motion to suppress. He contends that his referral to the secondary inspection area went beyond the scope of a routine checkpoint stop since the border patrol officer had determined that Solis-Serrano was "lawfully present in the United States," and the officer "had no reason to suspect that [Solis-Serrano] was smuggling aliens or committing some other crime for which the United States Border Patrol had jurisdiction to effectuate an arrest." Appellant's Brief-in-Chief at 14. According to Solis-Serrano, once the officer had made these determinations, he should have permitted Solis-Serrano to proceed on his way without further questioning or delay.
 
 
 8
 He further contends that the officer did not have any articulable suspicion that Solis-Serrano was engaged in unlawful conduct; thus the officer had no legitimate reason to continue asking questions, including questions relating to a search of his car. Id. at 14-15.
 
 
 9
 Extending that reasoning, Solis-Serrano also argues that "an agent may only direct a vehicle into a secondary inspection area and further question the occupants on the basis of reasonable suspicion that a crime has been committed." Id. at 15. Furthermore, Solis-Serrano urges that even when suspicious circumstances are encountered, the border patrol officer may still not direct a car to the secondary inspection area unless "traffic is backing up," and even in those circumstances the additional questions asked at the secondary inspection area must be strictly limited to specific suspicious circumstances. Id. Thus, for example, he suggests that the officer could have asked specific questions about the sweet smell, or why the automobile had new carpeting in the back; "[b]ut by immediately asking for consent to search, Agent Thatcher exceeded the scope of a routine checkpoint inspection upon less than reasonable suspicion, and in this regard, he violated appellant's Fourth Amendment rights." Id. at 17.
 
 
 10
 With respect to his Fifth Amendment right to remain silent, Solis-Serrano argues that testimony elicited at trial contradicts testimony given at the suppression hearing with respect to whether he or an officer initiated further conversation after he had initially invoked his right to remain silent. There is no contention that Solis-Serrano at any time requested a lawyer, and this aspect of a defendant's constitutional rights is not in issue.
 
 
 11
 In reviewing a denial of a motion to suppress, this court must accept the trial court's findings of fact, unless they are clearly erroneous. Further, the reviewing court reviews the evidence in the light most favorable to the district court's finding. United States v. Benitez, 899 F.2d 995, 997 (10th Cir.1990). However, the ultimate determination of reasonableness under the Fourth Amendment is a conclusion of law which we review de novo. United States v. Butler, 904 F.2d 1482, 1484 (10th Cir.1990).
 
 
 12
 After hearing evidence presented at the suppression hearing, the district court made the following findings and conclusions:
 
 
 13
 [THE COURT]: I will deny the motion. The agent stopped the vehicle or the vehicle came into primary and the agent asked him for his citizenship. His hand was shaking when he got the documents out of his wallet and gave them to the agent.
 
 
 14
 In addition, the agent smelled a sweet smell in the vehicle, which is often indicative of a masking agent. The agent saw new carpet in a portion of the car and indicated then there was indication of a raised compartment at which point the agent asked if he would agree to a dog sniff of the car. He said yes. At that point the agents sent him to secondary. And in secondary he appeared to start up again after having stalled and seemed to take off.
 
 
 15
 All of this is immaterial once you got to secondary, because he had plenty of grounds to send him to--reasonable articulable suspicion to send him to secondary. When the car shut off and started up the agent was under the impression he was trying to leave the area, so they stopped him and went ahead with the dog alert which he had already agreed to. They found the compartment and the marijuana.
 
 
 16
 I find that the agents had ample cause for all of their actions, ample cause for suspicion to justify sending them to secondary and asking for consent for the dog and all that follows.
 
 
 17
 I take it, Mr. Coronado, you're not making an issue about the statements or the Miranda warnings, but just for the record I'll find that he was given his Miranda warnings after the dog had alerted on the vehicle and before any questioning occurred. No indication that he was coerced into doing so. At first he indicated he did not want to talk. No questions were asked. Then he voluntarily started talking again. The agents said, "Well, wait a minute," reread him his rights and he went ahead and gave up the right to an attorney and talked.
 
 
 18
 So these will constitute my findings and conclusions. Anybody want anything further? Is this sufficient for your records?
 
 
 19
 MS. BURNHAM: It's sufficient for the Government, your Honor.
 
 
 20
 MR. CORONADO: It's sufficient for the defense as well, Judge.
 
 
 21
 R. Vol. III at 29-30.
 
 
 22
 We have reviewed the record, and conclude that the district court's findings of fact, as set forth above, are not clearly erroneous. And, based upon those findings, there is no constitutional error in the court's conclusions, and its denial of the motion to suppress.
 
 
 23
 Under these circumstances, and for even less reasons, border patrol agents may direct a driver to the secondary inspection area. United States v. Martinez-Fuerte, 428 U.S. 543, 560, 563 (1976); United States v. Sanders, 937 F.2d 1495, 1499 (10th Cir.1991), cert. denied, 112 S.Ct. 1213 (1992); United States v. Rubio-Rivera, 917 F.2d 1271, 1275-76 (10th Cir.1990). Additionally, questioning by border patrol agents is not confined to citizenship or immigration status but may address any suspicious circumstance. Sanders, 937 F.2d at 1499-1502; Rubio-Rivera, 917 F.2d at 1276; United States v. Benitez, 899 F.2d at 997.
 
 
 24
 Here, the border patrol agents were entitled to pursue their questioning in view of Solis-Serrano's nervousness, the use of air freshener which could mask the odor of drugs, the installation of some new carpeting in the rear of the vehicle, and an unusual configuration which indicated the presence of a hidden compartment. Based on the officer's training and experience, these circumstances, as the district court found, gave rise to at least articulable suspicion that the vehicle contained contraband. We are not asked whether the circumstances actually provided probable cause.
 
 
 25
 The canine sniff around the exterior of the vehicle Solis-Serrano was driving, while the vehicle was lawfully detained for a brief period at the secondary inspection area under the circumstances presented, was permissible with or without Solis-Serrano's consent. United States v. Morales-Zamora, 914 F.2d 200, 205 (10th Cir.1990).[1] However, a valid consent was given. The dog's alert to drugs in the car supplied probable cause to search the vehicle in its entirety, assuming probable cause did not exist already. Id. at 205-06.
 
 
 26
 The district court's factual findings which, as indicated above, are not clearly erroneous, dispose of Solis-Serrano's Miranda argument. After first invoking his rights, Solis-Serrano initiated further conversation, was reread his rights, and voluntarily waived them. There was no coercion, and he did not make incriminating statements until after his voluntary waiver. The fact that some potentially contradictory testimony was given later, at the trial of the case, does not have any bearing on the district court's findings based upon the evidence adduced at the suppression hearing itself.
 
 III.
 
 27
 We review the decision of a district court to admit evidence of a prior felony conviction pursuant to Fed.R.Evid. 609 under an abuse of discretion standard. See United States v. Davis, 929 F.2d 554, 558 (10th Cir.1991). However, where no specific objection is made, we review only for plain error.
 
 
 28
 At trial, Solis-Serrano testified in his own behalf. On cross examination, he admitted that he entered a plea of no contest to possession of marijuana, but denied that he had been involved in the drug trade, or convicted of a felony drug violation. The government then produced a certified copy of a judgment and sentence showing felony convictions for possession of narcotics for sale and possession of cocaine, and moved for its admission into evidence. The district court admitted the document over defense counsel's objection. That objection, however, was only to the certification of Solis-Serrano's prior convictions. R. Vol. IV at 97-101. None of the contentions raised on appeal, discussed below, were brought to the court's attention by way of objection at the time the exhibit was admitted. Thus, our review is limited to plain error.
 
 
 29
 Solis-Serrano concedes that: "While Rule 609 does permit the government to cross-examine a defendant on his prior felony convictions under certain circumstances, the trial court is not required to allow such impeachment every time a defendant takes the stand in his own defense." Appellant's Brief-in-Chief at 20 (emphasis in original). He then contends that the district court abused its discretion in this instance because the prior offenses in question did not involve dishonesty, thus did not bear on credibility. We have previously rejected such an argument, see United States v. Wolf, 561 F.2d 1376, 1381 (10th Cir.1977), and Fed.R.Evid. 609(a)(1) contains no such limitation.
 
 
 30
 Solis-Serrano next argues that the district court abused its discretion because it did not engage in a weighing process pursuant to Fed.R.Evid. 403, to determine whether the probative value of the evidence "for credibility impeachment purposes" substantially outweighs its prejudicial effect. Appellant's Brief-in-Chief at 21. He also contends that the district court committed reversible error by failing to require the government to come forward with any evidence explaining its theory of admissibility for the evidence, and by failing to make factual findings on the record with respect to what factors the court considered in its weighing process. Id. at 21-22.
 
 
 31
 These arguments, however, are largely raised in the context of Solis-Serrano's premise that evidence of prior convictions is limited to convictions involving dishonesty or false statements, i.e., convictions going to the credibility of the witness. As indicated, we reject such a limited construction of Fed.R.Evid. 609(a)(1). Furthermore, Solis-Serrano concedes that "the trial court indicated that it had engaged in a Rule 403-type balancing process in deciding to permit the impeachment," thus reducing his argument to a lack of evidence on the record as to what factors the court considered. Appellant's Brief-in-Chief at 21.
 
 
 32
 However, the court's reasoning is clear: "Well, you asked him whether he was convicted of possession for narcotics for sale, and he said no. This [the certified copy of the convictions] can be admitted. And it speaks for itself. There is no point in examining him about it." R. Vol. IV at 98. The probative value of this direct impeachment evidence is abundantly clear from the record, beginning with Solis-Serrano's counsel asking questions on direct examination which distorted the defendant's prior record, id. at 96, through the government's cross examination and Solis-Serrano's false answer regarding his prior convictions. Id. at 97-101. Indeed, prior to Solis-Serrano taking the stand in his own behalf, his counsel represented to the court that he had advised him not to do so, stating:
 
 
 33
 I have discussed that with him, and we have discussed the fact that if he testifies the Court will permit the United States attorney to ask him about his prior convictions in California. And he says notwithstanding that will happen, he wants to tell the jury his story. So over the advice of counsel, he will testify on his own behalf.
 
 
 34
 However, I would like clarification. I would like to know specifically how many questions the Court will permit the U.S. Attorney to ask him with reference to his prior conviction?
 
 
 35
 Id. at 78 (emphasis added).
 
 
 36
 Finally, Fed.R.Evid. 609(a)(1) does not require findings on the record, and we have not adopted any such rule. See United States v. Sides, 944 F.2d 1554, 1561 (10th Cir.), cert. denied, 112 S.Ct. 604 (1991).
 
 
 37
 We conclude that the district court did not commit plain error when it admitted into evidence, for impeachment purposes, the certified copy of Solis-Serrano's two prior felony convictions involving narcotics.
 
 CONCLUSION
 
 38
 For the reasons stated above, the judgment of conviction in this case is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Our conclusions as to the circumstances rule out any question of pretextual stop. See United States v. Morales-Zamora, 974 F.2d 149 (10th Cir.1992)