879 P.2d 114

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Hector GUZMAN, Defendant–Appellant.**

**No. 13977.**

Court of Appeals of New Mexico.

June 30, 1994.

**114**

Tom Udall, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Amme M. Hogan, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Judge.

Hector Guzman (Defendant) appeals his conviction of possession of marijuana with intent to distribute. He pled guilty to the charge, reserving the right to appeal the district court's denial of his motion to suppress evidence. On appeal, Defendant argues that his constitutional rights were violated during his detention at the border patrol checkpoint where the marijuana was found. We determine the district court could find the border patrol agent had reasonable suspicion to prolong Defendant's detention

and, therefore, affirm the denial of his motion to suppress.

Defendant was stopped at a fixed border patrol checkpoint on I–10 west of Las Cruces. As Agent Douglas Robinson approached Defendant's vehicle, he noticed from five or six feet away a strong odor of air freshener emanating from the vehicle. Two air fresheners hung from the rear view mirror. Based on Robinson's more than three years' experience as a border patrol agent, he knew deodorizers were often used to mask the odor of unlawful drugs. When Robinson asked Defendant about his citizenship, Defendant handed over an I–551 permanent resident alien card. Robinson examined the document to determine if it appeared genuine and satisfied himself that Defendant was lawfully within this country. He then asked where Defendant was coming from and whether Defendant was the owner of the vehicle. In response to the second question, Defendant said that he was the owner and asked if Robinson would like proof. When Defendant handed over the truck registration materials, Robinson observed that Defendant's hands were shaking and his eyes were darting around, avoiding making eye contact with Robinson. Noting that traffic was beginning to back up, Robinson then referred Defendant to a secondary area while Robinson went to the checkpoint inspection trailer to compare the registration with the immigration document. Agent John Howarth, a second border patrol agent, approached the truck at the secondary area, asked Defendant to get out of the truck, and independently asked about the strong odor. Defendant opened a box of cigarettes, pulled out a marijuana cigarette and a partially burned marijuana cigarette, told the agent that he smoked marijuana, that is what the agent smelled, and that was all he had. Defendant then consented to a canine search of the truck. When the dog alerted to the gas tank, Defendant voluntarily stated there was more marijuana in the tank. The agents discovered approximately twenty-nine pounds of marijuana in the gas tank. No more than six or seven minutes had elapsed between the time Defendant entered the checkpoint and when he told the agents there was more marijuana in the gas tank.

We are not concerned with the search. Defendant seems to concede that, once he displayed the marijuana cigarettes, probable cause existed to search. Additionally, Defendant consented to the search. In this case, we are concerned with what occurred from the time Defendant entered the main checkpoint to the time when he showed Howarth the marijuana cigarettes because this last fact provided probable cause to search the vehicle. *See, e.g., State v. Capps,* 97 N.M. 453, 456, 641 P.2d 484, 487 (officer had probable cause to search the car after he smelled marijuana), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982).

■ We review the detention and questioning at secondary to determine whether it was supported by reasonable suspicion that Defendant was involved in criminal activity. *See State v. Affsprung,* 115 N.M. 546, 549, 854 P.2d 873, 876 (Ct.App.) (reasonable suspicion lower than probable cause standard), *cert. denied,* 115 N.M. 545, 854 P.2d 872 (1993). The evidence is viewed in the light most favorable to the district court's ruling as we determine whether the law was correctly applied. *State v. Galloway,* 116 N.M. 8, 9, 859 P.2d 476, 477 (Ct.App.1993). We review as a matter of law the totality of the circumstances to determine whether the detention in this case was justified. *Affsprung,* 115 N.M. at 549, 854 P.2d at 876.

■ In the present case, the border patrol agents had drug enforcement authority as well as authority as immigration officers. Robinson had eleven years' experience in law enforcement, including over three years as a border patrol agent, when Defendant was stopped. Robinson knew that deodorants are often used to mask the odor of illegal drugs or substances. He testified that the odor of the air fresheners from the truck was a lot stronger than he felt it should be, stronger than he had previously noticed in other vehicles. Indeed, when asked to rate the odor from the vehicle on a scale of one to ten when all the others had been fives, Robinson rated the odor as a nine. *See United States v. Alvarado,* 519 F.2d 1133 (5th Cir. 1975) (use of air freshener was factor in establishing articulable suspicion at border patrol checkpoint), *cert. denied,* 424 U.S. 911,

96 S.Ct. 1107, 47 L.Ed.2d 315 (1976); *United States v. Solis–Serrano,* 982 F.2d 530, 1992 WL 372405 (10th Cir.1992) (unpublished decision) (same); *United States v. Sanchez–Valderuten,* 11 F.3d 985, 989 (10th Cir.1993) (odor of deodorizer was factor in establishing reasonable suspicion after highway stop); *State v. Alonzo,* 587 So.2d 136, 140 (La.Ct. App.1991) (same); *United States v. Stone,* 866 F.2d 359, 362 (10th Cir.1989) (presence of Patchouli oil, which emits a strong odor, was factor in establishing reasonable suspicion); *United States v. Jaime–Barrios,* 494 F.2d 455 (9th Cir.) (observation of talcum powder, which smugglers often use to cover smell of marijuana, around trunks of vehicles was factor in establishing founded suspicion for stop), *cert. denied,* 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143 (1974); *United States v. Reyna,* 546 F.2d 103 (5th Cir.1977) (odor of air freshener was factor in establishing probable cause); *United States v. Medina,* 543 F.2d 553 (5th Cir.1976), *cert. denied,* 429 U.S. 1109, 97 S.Ct. 1144, 51 L.Ed.2d 563 (1977) (same); *United States v. Gutierrez–Espinosa,* 516 F.2d 249 (9th Cir.1975) (strong odor of car deodorizer was relevant to defendant's knowledge of presence of marijuana in the vehicle).

In addition, Robinson noted that Defendant appeared very nervous when handing over the truck registration document. Nervousness during a routine checkpoint stop is more significant than nervousness when one's vehicle is singled out from traffic for a police stop. *See United States v. Martinez–Fuerte,* 428 U.S. 543, 558, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116 (1976) (motorist stopped at traffic checkpoint is much less likely to be frightened than is motorist stopped by a roving patrol). The highly unusual strength of the odor of the air freshener, together with Defendant's nervousness, justified a brief extension of the detention of Defendant's vehicle and questioning of Defendant.

In this regard, we emphasize that Defendant had already been subjected to a legal stop and brief detention. What is involved here is not the existence of reasonable suspicion necessary to justify the initial stop of a traveling motorist. The determination of whether reasonable suspicion justifies a de-

tention depends both on the probativeness of the articulable suspicious circumstances and the extent of the intrusion. *See United States v. Chaidez,* 919 F.2d 1193, 1198 (7th Cir.1990) ("Stops too intrusive to be justified by suspicion under *Terry* [*v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ], but short of custodial arrest, are reasonable when the degree of suspicion is adequate in light of the degree and duration of restraint."), *certs. denied,* 501 U.S. 1234, 111 S.Ct. 2861, 115 L.Ed.2d 1028, *and* 502 U.S. 872, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991); *accord United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994); *see Galloway,* 116 N.M. at 10, 859 P.2d at 478 ("In determining the reasonableness of this detention, we emphasize the brief period of time involved."). *Cf. State v. Bolton,* 111 N.M. 28, 42, 801 P.2d 98, 112 (Ct.App.) (a momentary extension of a previously lawful detention for the purpose of requesting permission to search is constitutionally permissible in certain circumstances), *cert. denied,* 111 N.M. 16, 801 P.2d 86 (1990).

We recognize that Defendant elicited testimony that Robinson had personally been involved in only five to ten cases during his time as a border patrol agent when a car was detained because of the smell of air freshener and contraband was found. Robinson could not estimate the number of vehicles that pass through the checkpoint with air fresheners, although there were "lots more" than five to ten. This testimony, however, does not invalidate Robinson's reasonable suspicion of criminal activity based on his observation that the odor from this truck was much stronger than he usually encountered and his knowledge that air fresheners or other deodorizers are sometimes used to mask the odor of drugs. Nor does the fact that Robinson stated he had not personally used more than one air freshener at one time contradict his testimony that the smell seemed too strong even after he saw the two air fresheners in Defendant's vehicle. The point was not that the smell seemed too strong given the number of air fresheners in the car; it was that the smell seemed too strong in light of the amount of 'freshening' used by other drivers, thus giving rise to an inference that the air fresheners served a purpose other than simply to improve the odor of the vehicle interior.

◼ We recognize that the circumstances giving rise to Robinson's suspicion do not strongly indicate criminal activity and are not necessarily inconsistent with innocent behavior. We disagree, however, with the dissent's apparent view that conduct consistent with innocent behavior cannot establish reasonable suspicion. To say that conduct is not consistent with innocent behavior is to say that the conduct conclusively establishes guilt. That is scarcely the test for reasonable suspicion, or even probable cause. The United States Supreme Court has repeatedly pointed out that conduct consistent with innocence may establish reasonable suspicion and probable cause. *See United States v. Sokolow,* 490 U.S. 1, 9–10, 109 S.Ct. 1581, 1586–87, 104 L.Ed.2d 1 (1989). "[S]imply because certain conduct may be construed as consistent with innocent behavior does not mean that this conduct may not form the basis for reasonable suspicion. In many cases a police officer, familiar with the salient characteristics of a particular type of criminal activity, may be able to 'perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.' *Brown v. Texas,* 443 U.S. 47, 52 n. 2 [99 S.Ct. 2637, 2641 n. 2, 61 L.Ed.2d 357] (1979)." *United States v. Gomez,* 776 F.2d 542, 548 (5th Cir.1985). The issue is whether the observation of the conduct "warranted further investigation." *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The circumstances present here raised a substantial question regarding Defendant's behavior, and the border patrol agents were warranted in briefly questioning Defendant to resolve that question. *See Galloway,* 116 N.M. at 9–10, 859 P.2d at 477–78; *United States v. Ludlow,* 992 F.2d 260, 264–65 (10th Cir.1993) (border patrol agents had reasonable suspicion that defendant was committing a crime because: defendant did not roll the driver's window all the way down, raising a suspicion of trying to hide an odor; defendant was nervous, perspiring under his nose and looking all around; defendant could not find the car registration, and the car did not belong to him). *Cf. United States v.*

*Fernandez,* 18 F.3d 874, 881 (10th Cir.1994) (state trooper who pulled defendant's truck over for a traffic violation and excessively tinted windows did not have a reasonable suspicion to continue the detention after issuing the traffic citation).

Judge Flores' dissent relies on *State v. Estrada,* 111 N.M. 798, 810 P.2d 817 (Ct.App. 1991). In that case, we held that an out-of-place spare tire, alone, was not such a suspicious circumstance as would justify the continuing detention to which the defendant was subjected. *Id.* at 802, 810 P.2d at 821. We did note in that opinion, however, the lack of suspicious factors such as nervousness or other unusual behavior. We also noted the absence of any evidence of experience of the agents with spare tires that would make the tire in that case an indicator of illegal conduct. *Id.* Here, we have both nervousness and experience with the use of air fresheners to mask the odor of unlawful drugs. Finally, and perhaps most significantly for this case, we said in *Estrada* that although the observation of the tire could not justify the particular detention, "the agent's observation regarding the spare tire could justify further questioning." *Id.* That is precisely what happened here.

The issue of reasonable suspicion was a question for the lower court to resolve, and it resolved that question against Defendant. Our function is to view the evidence in a light favorable to the district court's ruling to determine if the law was correctly applied. We hold it was.

We affirm the district court's order denying Defendant's motion to suppress evidence.

**IT IS SO ORDERED.**

HARTZ, J., concurs.

BENNY E. FLORES, Judge (dissenting).

FLORES, Judge, dissenting.

I respectfully dissent. I do not agree with the majority's determination that there was reasonable suspicion to justify prolonging the detention of Defendant beyond the scope of a routine checkpoint stop. *See United States v. Pierre,* 958 F.2d 1304, 1308–09 (5th Cir.),

*cert. denied sub nom., Harris v. United States,* —— U.S. ——, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992); *United States v. Martinez–Fuerte,* 428 U.S. 543, 558–59, 96 S.Ct. 3074, 3083–84, 49 L.Ed.2d 1116 (1976); *State v. Affsprung,* 115 N.M. 546, 549, 854 P.2d 873, 876 (Ct.App.), *cert. denied,* 115 N.M. 545, 854 P.2d 872 (1993); *State v. Estrada,* 111 N.M. 798, 799, 810 P.2d 817, 818 (Ct.App. 1991).

This Court has consistently delineated the constitutional scope of a border patrol checkpoint stop as not requiring any individualized suspicion of wrongdoing provided the brief stop is limited to an inquiry into citizenship and a visual inspection of vehicles. *Affsprung,* 115 N.M. at 549, 854 P.2d at 876 (citing *United States v. Sanders,* 937 F.2d 1495 (10th Cir.1991), *cert. denied* 502 U.S. 1110, 112 S.Ct. 1213–14, 117 L.Ed.2d 451 (1992)); *Estrada,* 111 N.M. at 799, 810 P.2d at 818 (citing *Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074); *see also State v. Galloway,* 116 N.M. 8, 10–11, 859 P.2d 476, 478–79 (Ct.App.1993) ("[R]easonable suspicion is the standard by which to judge detention at a checkpoint which extends beyond the time necessary for agents to satisfy themselves about the citizenship of a vehicle's occupants[.]") (citing *Pierre,* 958 F.2d at 1308) (Fifth Circuit interpreted and applied *Martinez–Fuerte* as limiting scope of border patrol checkpoint stop to brief questions regarding citizenship and request for production of citizenship documentation to further the governmental interest in preventing influx of illegal aliens.), *cert. denied,* —— U.S. ——, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992).

" 'Individualized suspicion' " and " 'reasonable suspicion' " are used interchangeably. *Estrada,* 111 N.M. at 801, 810 P.2d at 820. In order to extend the detention beyond the scope of a routine checkpoint stop, reasonable suspicion is the proper legal standard. *Affsprung,* 115 N.M. at 549, 854 P.2d at 876; *see Estrada,* 111 N.M. at 799, 810 P.2d at 818. This Court in *Estrada* reversed the trial court's denial of a motion to suppress evidence seized at the secondary detention area because the border patrol had extended the detention beyond the purposes of a checkpoint stop when they referred defen-

dants to the secondary area even though defendants had already provided the proper citizenship documentation at the primary inspection area. 111 N.M. at 798, 800, 810 P.2d at 817, 819. Absent reasonable suspicion to continue the detention, defendants' fourth amendment rights were violated because the border patrol exceeded the scope of the checkpoint stop. *Id.* at 800, 810 P.2d at 819. The rationale behind this Court's determination that "if the issues of residence or citizenship are resolved at the primary area of the checkpoint, referral of a vehicle to the secondary area must be based on at least reasonable suspicion of wrongdoing[,]" *id.* at 799, 810 P.2d at 818, was stated as follows: "Any other result would give border agents unlimited discretion to detain vehicles even though the limited reasons for the original detention had already expired." *Id.* at 800, 810 P.2d at 819.

The scope of an intrusion following a stop has to be strictly linked to and warranted by the circumstances which make the initial intrusion permissible. *See State v. Reynolds,* 117 N.M. 23, 26, 868 P.2d 668, 671 (Ct.App. 1993), *cert. granted,* 117 N.M. 328, 871 P.2d 984 (1994). In the instant case, once the inquiry into Defendant's citizenship and a visual inspection of his vehicle had been made, *see Affsprung,* 115 N.M. at 549, 854 P.2d at 876, the purpose of the stop had been effectuated. *See Reynolds,* 117 N.M. at 27, 868 P.2d at 672 (Where purpose of stop was safety concern and not any violation of the law, "fact that the officer had a legitimate reason to stop the vehicle and caution the hitch-hiker-passengers about the danger of dangling their feet over the tailgate does not create a reasonable suspicion that the driver was unlicensed or the vehicle was stolen." This Court held that the officer violated the Fourth Amendment and exceeded the scope of the initial stop by requiring production of driver's licenses, registration, proof of insurance, and conducting a "wants and warrants" check on all the occupants of the vehicle.)

Whether or not there is " '[r]easonable suspicion' [to support the detention] is judged by an objective standard: would the facts and inferences available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate." *State v. Lyon,* 103 N.M. 305, 307, 706 P.2d 516, 518 (Ct.App.), *cert. denied,* 103 N.M. 287, 705 P.2d 1138 (1985). Furthermore, "[t]he officer must be able to articulate specific facts and reasonable inferences drawn from those facts." *Id.* To determine whether the border patrol had reasonable suspicion to further detain Defendant at the checkpoint, this Court examines the totality of the circumstances at the time of the stop. *Estrada,* 111 N.M. at 801, 810 P.2d at 820.

In this case, Defendant was stopped at the I–10 border patrol checkpoint west of Las Cruces where he provided Agent Robinson (Robinson) with the proper citizenship documentation at the primary inspection point thereby demonstrating that his citizenship documentation was in order and that he was in this country legally. There were only two individualized facts articulated by Robinson which could possibly have made him suspicious: (1) the presence of two air fresheners in Defendant's vehicle along with a strong smell of air freshener emanating from the vehicle; and (2) Defendant's appearance of nervousness illustrated by his shaking hands and darting eyes. Because both facts are consistent with entirely innocent behavior, I cannot agree with the majority's determination that there was reasonable suspicion to support Defendant's further detention. *See State v. Galvan,* 90 N.M. 129, 133, 560 P.2d 550, 554 (Ct.App.1977). (Neutral conduct does not provide reasonable suspicion.). "At a minimum, however, the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App. 1991) (en banc) (citing *Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979)). Furthermore, I am not persuaded by the majority's reliance on *United States v. Sokolow,* 490 U.S. 1, 9–10, 109 S.Ct. 1581, 1586–87, 104 L.Ed.2d 1 (1989) (quoting *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980)), for the proposition that there are "circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot."

In *Sokolow,* the United States Supreme Court found a pattern of criminality in otherwise innocent behavior where the defendant's actions included: (1) very nervous behavior; (2) using an alias to purchase plane tickets; and (3) the action which the United States Supreme Court classified as "out of the ordinary" of paying cash for the $2100 plane tickets with a roll of twenty dollar bills from a wad including almost twice that much cash. *Sokolow,* 490 U.S. at 4–5, 8, 109 S.Ct. at 1583–84, 1585. In addition, in *Sokolow* it was necessary for the officer "to articulate something more than an 'inchoate and unparticularized suspicion or "hunch." ' " *Id.* at 7, 109 S.Ct. at 1585. In the instant case, there are no such articulable facts of wrongdoing. *See United States v. Fernandez,* 18 F.3d 874, 878–80 (10th Cir.1994) (Defendant's unusual nervousness and passenger's startled awakening and stiff demeanor did not provide reasonable suspicion to extend detention beyond time necessary to issue initial traffick citation once defendant had shown valid driver's license and registration. Officer was acting on an unparticularized hunch rather than on reasonable and objective suspicion.).

As regards the first fact relied on by the State to support reasonable suspicion, the use of a deodorizer is not considered unusual or even uniquely suited to the use of transporting illegal drugs. *State v. Zelinske,* 108 N.M. 784, 787, 779 P.2d 971, 974 (Ct.App. 1989), *overruled on other grounds by, State v. Bedolla,* 111 N.M. 448, 455, 806 P.2d 588, 595 (Ct.App.), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991); *Snow v. State,* 84 Md.App. 243, 578 A.2d 816, 824 (1990) (After driver had been issued warning ticket for speeding, driver's apparent nervousness, his failure to make eye contact with state trooper, travel from Philadelphia to Washington, D.C. on major interstate, and three air fresheners hanging from rear-view mirror, did not provide reasonable suspicion to warrant driver's detention for dog sniff of vehicle. "Air fresheners are ... completely legitimate object[s]; some are ... ornamental as well as functional.... The addition of a new freshener without removing the old one is not unusual. As with other cleaning products, when the consumer is uncertain regarding the useful life of a product, the tendency is to keep the old one for a while longer.").

As regards the second fact the State relies on to support reasonable suspicion, the State has failed to demonstrate that Defendant's level of nervousness was of an unusual degree or indicative of anything other than innocent behavior. Although Robinson testified that Defendant was nervous, there is no cited testimony to the effect that Defendant "exhibited any unusual behavior such as excessive nervousness." *See Estrada,* 111 N.M. at 798, 810 P.2d at 817. Nervousness is a highly subjective observation. *Snow,* 578 A.2d at 824; *United States v. Bloom,* 975 F.2d 1447, 1458 (10th Cir.1992). Furthermore, individuals often become nervous when stopped by a law enforcement officer. *Snow,* 578 A.2d at 824; *see State v. Schlosser,* 774 P.2d 1132, 1137–38 (Utah 1989).

There is no indication that Defendant displayed any signs of nervousness during the initial questioning by Robinson. To the contrary, the testimony indicates that Defendant did not show signs of nervousness until after he had satisfactorily demonstrated to Robinson that his citizenship documentation was in order and that he was in this country legally. It was only after Robinson continued to investigate Defendant by asking questions not pertaining to Defendant's citizenship such as where he had been and questions regarding the ownership and registration of the vehicle, *see Galloway,* 116 N.M. at 9–10, 859 P.2d at 477–78, that Defendant showed some signs of nervousness. It was also at this point that Robinson requested Defendant's vehicle registration materials and referred Defendant to the secondary area while he checked on the registration materials which ultimately were determined to be in order. Given the facts that Defendant was traveling alone in a foreign country, was stopped by the border patrol near Las Cruces, his status was that of a permanent resident with an alien card, and the investigatory questions posed by Robinson went beyond mere inquiries into his citizenship status, I believe Defendant's display of nervousness is consistent with entirely innocent behavior. *See Fernandez,* 18 F.3d at 879 ("[N]ervousness is of limited significance in determining reasonable suspi-

cion '. . . . It is common knowledge that most citizens, and especially aliens, whether innocent or guilty, when confronted by a law enforcement officer who asks them potentially incriminating questions are likely to exhibit some signs of nervousness.' ").

Accordingly, I do not believe we should slap together two facts which are examples of neutral conduct consistent with innocent behavior to come up with the determination that there was reasonable suspicion of wrongdoing. Had there been irregularities in Defendant's citizenship documentation in addition to the multiple air fresheners and had Defendant exhibited unusual behavior such as excessive nervousness, *see Estrada*, 111 N.M. at 798, 810 P.2d at 817, I would be more inclined to join the majority in finding reasonable suspicion. *See Affsprung*, 115 N.M. at 549–50, 854 P.2d at 876–77 (Agent had reasonable suspicion to justify extending the investigation at a fixed border checkpoint where defendant had a "kicked back" demeanor; the agent smelled alcohol; it was around 9:00 p.m.; defendant had no visible luggage and was driving an expensive car which seemed inconsistent given his youth; and the agent smelled burnt marijuana.). However, that is not the case here. Accordingly, I respectfully dissent and would reverse the trial court's denial of Defendant's motion to suppress.