612 P.2d 1353

**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Ricardo Venegas MONTOYA,
Defendant-Appellee.**

**No. 4249.**

Court of Appeals of New Mexico.

May 15, 1980.

Jeff Bingaman, Atty. Gen., Arthur Encinias, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

John B. Bigelow, Chief Public Defender, Martha A. Daly, Asst. App. Defender, Santa Fe, for defendant-appellee.

OPINION

HENDLEY, Judge.

The sole issue in this case is whether police officers were justified in approaching the defendant and another who were sitting in an automobile parked alongside the home of the defendant's parents, with whom the defendant was living at the time.

There was a burglary and larceny of room number 11 at the La Fonda Motel. A set of Lloyd speakers were taken, the wires from which were ripped, not cut. The manager described two people he saw walking away from the general area as about "five eight, Spanish males, in their teens, with bushy hair," and medium build. Based on this information, Officer White told one of the investigating officers that he suspected one of the Montoyas. Two days later, the wallet of the victim was found about three or four blocks from defendant's residence.

Shortly after the wallet was found, Officers Sadler and Tully went to the defendant's residence in furtherance of their investigation of the burglary and larceny at the motel. Defendant's car was parked at the side of the house. There was no real driveway in front of the house, but there was a drive up. The officers were in an unmarked car and in plain clothes. They approached the defendant's car, identified themselves as police officers, and told the occupants in the car that they were investigating the burglary at the La Fonda Motel. As Officer Sadler was identifying himself, he scanned the interior of the automobile and observed a stereo speaker which matched the description of one of the speakers reported stolen. Before any further discussion of the burglary, Officer Sadler told the defendant and his companion that he would read them their rights, which he did.

Based on the above, defendant's motion to suppress evidence and statements was granted. The trial court held that the facts:

did not provide the officers as persons of reasonable caution, with a reasonable suspicion that the law had been or was being violated giving them the right to proceed onto private property to question such Defendant and the other occupant of the automobile regarding the burglary, and therefore all evidence taken into custody thereafter, as well as the statement taken by the officers from the Defendant on May 5, 1979, should be, and the same is hereby suppressed.

In *State v. Chort*, 91 N.M. 584, 577 P.2d 892 (Ct.App.1978), we reversed the denial of a suppression because the officers had invaded defendant's expectation of privacy which was such that society would recognize as reasonable. In that decision, we stated: "We confine our discussion to the protection of privacy afforded by the Constitution rather than the increasingly discarded fictional and procedural barriers resting on property concepts."

Under the facts of this case, whether the officers had reasonable suspicion to enter on private property to question the defendant is irrelevant. We agree with the trial court that the officers had no articulable facts to focus suspicion on this defendant. However, prior to the time the officer observed the speaker in the rear of the automobile, there was no intrusion into an area of privacy of the defendant that could be termed unreasonable. In *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court stated:

It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest.

Further, at footnote 16 of that decision, the United States Supreme Court indicates what is more significant to our facts here:

Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred. We cannot tell with any certainty upon this record whether any such "seizure" took place here prior to Officer McFadden's initiation of physical contact for purposes of searching Terry for weapons, and we thus may assume that up to that point no intrusion upon constitutionally protected rights had occurred.

In the instant case, the testimony shows the absence of an intrusion by the police officers. The evidence at the suppression hearing showed that Officer Sadler saw a speaker lying in plain view in the back seat while he was identifying himself. The speaker had the same dimensions and the same brand name as the one stolen in the burglary. The wiring appeared ripped out or torn and not cut. When the officer saw the speaker, before proceeding any further, he read the defendant and his companion their rights. Hereupon, the defendant executed a consent to search and the second

speaker was found. Subsequently, defendant made an inculpatory statement.

Our analysis of this case for Fourth Amendment purposes shows that the defendant sat in his automobile with contraband exposed to any member of the public who approached him. The fact that he was approached by a suspicious officer does not change our analysis when we view the absence of any reasonable expectation of privacy under the circumstances. The suspicious officer, in this case, had as much right as any member of the public to approach the defendant. Defendant made no objection to the officers' presence or in any way suggested that the officers were not welcome to approach him. Furthermore, there is no showing that the officers exercised any physical force or show of authority, or restrained the defendant prior to the time they observed the contraband in plain view in the rear of the automobile.

Defendant's reliance on *State v. Ray*, 91 N.M. 67, 570 P.2d 605 (Ct.App.1977), and *State v. Galvan*, 90. N.M. 129, 560 P.2d 550 (Ct.App.1977), is misplaced. Those decisions hold that an inarticulable hunch is insufficient to constitute reasonable suspicion. They require an awareness of specific articulable facts, together with rational inferences, to provide a basis for a suspicion. However, those decisions involved an investigatory intrusion into a sphere in which the defendant could maintain a reasonable expectation of privacy. In *Galvan*, there was a stopping of the automobile; in *Ray*, an opening of the door of a parked pickup and a searching of the passengers for weapons thereafter. In this case, there was no such intrusion at the time the contraband was observed.

Under the circumstances of this case, we do not agree that the fact that the officers had proceeded onto private property to question the defendant violated his Fourth Amendment rights. As recently as *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the United States Supreme Court, in footnote 12, reaffirming *Terry v. State of Ohio, supra*, stated:

Mr. Justice WHITE, in a concurring opinion, made these observations on the matter of interrogation during an investigative stop:

"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." . . .

In light of the foregoing discussion, we reverse and remand this case.

IT IS SO ORDERED.

WOOD, C. J., and LOPEZ, J., concur.