810 P.2d 817

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Thomas Trevizo ESTRADA, Defendant–Appellant.**

**No. 12476.**

Court of Appeals of New Mexico.

March 19, 1991.

Tom Udall, Atty. Gen. and Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Noel Orquiz and Gary C. Mitchell, P.C., Ruidoso, for defendant-appellant.

## OPINION

BIVINS, Judge.

Defendant appeals his conviction for possession of a controlled substance with intent to distribute. The issue on appeal is the district court's refusal to suppress the evidence that was the basis of defendant's conviction. For the reasons discussed below, we reverse the district court's decision.

## FACTS

The suppression issue was tried below on a set of stipulated facts, and these are the only facts available for our consideration. Defendant drove a 1979 Pontiac station wagon into Border Patrol checkpoint 953, which is located at Orogrande in Otero County. One passenger was riding in the car with defendant. At the primary area of the checkpoint, defendant and the passenger were questioned about their citizenship and immigration status. Both produced proper immigration documents. There is no indication that either defendant or his passenger exhibited any unusual behavior such as excessive nervousness. The border patrol agent did notice that the spare tire in the rear of the station wagon was out of place. Based on this observation, the agent asked defendant to pull over into a secondary area. Defendant and his passenger were then asked to step out of the vehicle and wait at the rear. As they did so, another agent led a sniffer dog up to the vehicle and around it. The sniffer dog alerted to the underside of the vehicle. The vehicle was then raised on a rack, and the dog alerted to the drive shaft, which the agents proceeded to saw open. The parties stipulated for purposes of the suppression hearing that the drive shaft contained marijuana.

Defendant was charged with possession of a controlled substance with intent to distribute. He pled no contest but reserved the right to appeal the suppression issue.

## DISCUSSION

The question in this case is whether the fourth amendment to the United States Constitution was violated when defendant was referred to the secondary area and asked to exit his car while the dog sniff was performed. The question has two subparts. First, was the agent required to have a reasonable suspicion of wrongdoing before referring defendant to the secondary area? If so, did the agent have such reasonable suspicion in this case? We note defendant's alternative argument that even reasonable suspicion would not suffice, because probable cause is necessary for a detention such as this one. Because we hold there was no reasonable suspicion in this case, we need not decide that issue. We hold only that, once the original purpose of a lawful checkpoint stop has been satisfied, further detention of a vehicle or person must be based on at least reasonable suspicion.

■ Border patrol checkpoint stops are subject to the strictures of the fourth amendment. *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *see also State v. Bolton*, 111 N.M. 28, 801 P.2d 98 (Ct.App.1990) (discussing state police roadblock at which border patrol agents were present). Brief stops at such a checkpoint, for the purposes of routine, limited inquiry into citizenship and visual inspection of vehicles, are constitutionally acceptable even without individualized suspicion of wrongdoing. *United States v. Martinez–Fuerte; United States v. Espinosa*, 782 F.2d 888 (10th Cir. 1986). If, however, the routine questioning and inspection is completed without raising questions regarding citizenship of the vehicle's occupants or a suspicion of criminal activity, detention of the vehicle should cease. *State v. Bolton* (where roadblock is set up to check driver's licenses, registration, and insurance, and routine checks are accomplished at primary stop area, removal

of vehicle to secondary area requires reasonable suspicion or probable cause); *see also United States v. Martinez–Fuerte* (checkpoint stops and referrals to a secondary area are acceptable if inquiry at secondary area is limited to visual inspection of vehicle and brief questioning regarding residence status; any further detention must be based on consent or probable cause); *United States v. Espinosa* (border patrol agent may question driver and passengers about citizenship and ask them to explain suspicious circumstances; any further detention must be based on consent or probable cause); *cf. United States v. Morales–Zamora*, 914 F.2d 200 (10th Cir.1990) (to determine whether defendants were unlawfully detained after initial lawful stop at checkpoint for drivers' licenses, vehicle registration, and proofs of insurance, court examines timing of dog sniff; where sniff took place before agent completed review of defendants' documents, no improper detention occurred). Therefore, if the issues of residence or citizenship are resolved at the primary area of the checkpoint, referral of a vehicle to the secondary area must be based on at least reasonable suspicion of wrongdoing. *See State v. Bolton*.

■ The state maintains no reasonable suspicion is necessary for a referral to a secondary area at a border patrol checkpoint. In making its argument, the state points out that the language in *Bolton* requiring such suspicion is dictum. While the proposition stated in *Bolton* could be characterized as dictum, it is a correct statement of the law. The purposes of a checkpoint stop are limited in scope. *See United States v. Martinez–Fuerte; United States v. Espinosa.* At motor vehicle checkpoints, travelers are constitutionally subject only to brief questioning and limited visual inspection of their vehicles. *Id.* More extensive detention must be based on some degree of individualized suspicion or consent. *United States v. Espinosa; United States v. McFayden*, 865 F.2d 1306, 1312 (D.C.Cir.1989) (roadblocks must detain drivers no longer than is reasonably necessary to accomplish the purposes of checking licenses and registration, unless other

facts come to light creating reasonable suspicion of criminal activity); *see also State v. Cohen,* 103 N.M. 558, 711 P.2d 3 (1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986) (detention of a defendant after the reason for a valid stop expires is analogous to an initial *Terry* stop and therefore must be based on reasonable suspicion). Suspicionless detention is limited to the narrow scope allowed by *United States v. Martinez–Fuerte* and other cases.

The state contends the *United States v. Martinez–Fuerte* case supports its position, because in *United States v. Martinez–Fuerte* defendant's vehicle was referred to a secondary area without any suspicion of wrongdoing. As we pointed out in *State v. Bolton,* however, the questioning at the secondary area in *United States v. Martinez–Fuerte* was equivalent to the brief questioning performed at the primary area in this case. *State v. Bolton,* 111 N.M. at 38, 801 P.2d at 108. The issue in this case and in *United States v. Martinez–Fuerte,* therefore, is not simply whether a secondary or primary area was the location of the questioning. The issue is the extent of detention allowed to accomplish the purposes of the checkpoint. The *Martinez–Fuerte* decision held that the detention must be limited to that required to accommodate brief questioning regarding residence and a visual inspection of the vehicle, and indicated that further detention would be proper only if based on consent or individualized suspicion. At the checkpoint involved in this case, the routine questioning and inspection were accomplished at the primary area instead of the secondary area. For that reason, the referral to the secondary area in this case was equivalent to the "further detention" referred to in *United States v. Martinez–Fuerte* and had to be based on sufficient particularized suspicion. Any other result would give border agents unlimited discretion to detain vehicles even though the limited reasons for the original detention had already expired.

We note that several federal cases support the state's contention that no reasonable suspicion is required prior to referral to a secondary area. *See, e.g., United States v. Dovali–Avila,* 895 F.2d 206 (5th Cir.1990) (agents may refer vehicles to a secondary area without particularized suspicion); *United States v. White,* 766 F.2d 1328 (9th Cir.1985) (same); *United States v. Garcia,* 616 F.2d 210 (5th Cir.1980) (same). In all of these cases, however, the initial proper inquiry raised questions regarding the truthfulness of the defendants' claims of residency or citizenship or regarding the occurrence of illegal activity. *See, e.g., United States v. Dovali–Avila* (sniffer dog alerted to vehicle before agent asked driver about citizenship; driver was nervous); *United States v. White* (car riding low in rear and, when agent pressed on trunk, shocks were stiff, indicating unusually heavy load); *United States v. Garcia* (defendant replied to questions nervously, dropped license because hands shook as he tried to give it to agent; visual inspection of vehicle during initial questioning revealed irregularities). Referral to a secondary area occurred only after suspicions were raised by circumstances revealed during the initial questioning. Also, all these opinions relied on *United States v. Martinez–Fuerte,* which said only that reasonable suspicion was not required to divert motorists to secondary for the initial brief questioning and inspection. We should distinguish between diversion to secondary for that purpose (which may be necessary when the volume of traffic would cause excessive disruption if vehicles were stopped at primary) and diversion to secondary after the routine questioning and investigation has been completed. Indeed, *United States v. Martinez–Fuerte,* if read literally (which we decline to do), seems to require that detention beyond the initial brief routine requires probable cause or consent. We decline to follow the opinions suggesting that detention at a checkpoint can be prolonged indefinitely without reasonable suspicion or probable cause.

Based on the foregoing, we hold that at least reasonable suspicion was necessary in this case to refer defendant to the secondary area. Once the routine questioning and inspection were completed, further detention had to be based on at least reason-

able suspicion of criminal activity. *See State v. Bolton.* In holding that at least reasonable suspicion was necessary to refer defendant to the secondary area, we note language in several cases which might be read as permitting roadblock officers to remove vehicles to a secondary location under certain circumstances, based on something less than reasonable suspicion. In *Michigan Department of State Police v. Sitz*, — U.S. ——, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), in upholding sobriety check points, the United States Supreme Court said, "Detention of particular motorists for more extensive field sobriety testing may require satisfaction of an individualized suspicion standard," — U.S. at ——, 110 S.Ct. at 2485, 110 L.Ed.2d at 420 (citing *United States v. Martinez–Fuerte*, 428 U.S. at 567, 96 S.Ct. at 3087). Also, in the leading New Mexico case on checkpoints, *City of Las Cruces v. Betancourt*, 105 N.M. 655, 735 P.2d 1161 (Ct.App.1987), we wrote, "Where facts within the observation of the officer warrant further investigation, the suspected motorist should be asked to pull into a separate testing area so as not to unreasonably inhibit the flow of traffic." *Id.* at 659, 735 P.2d at 1165. Did the Supreme Court in *Sitz*, by using the phrase "individualized suspicion standard," have in mind a lesser standard than "reasonable suspicion"? We do not read either that case or our own case of *City of Las Cruces v. Betancourt* as suggesting a separate lesser standard where the removal to secondary is indicated. It would appear that the terms "reasonable suspicion" and "individualized suspicion" have been used interchangeably. *See United States v. Martinez–Fuerte*, 428 U.S. at 556, 96 S.Ct. at 3082 ("we turn first to whether reasonable suspicion is a prerequisite to a valid stop, a question to be resolved by balancing the interests at stake"); *cf. id.* at 560, 96 S.Ct. at 3084 ("to accommodate public and private interests some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure"); *id.* at 562, 96 S.Ct. at 3085 ("the stops and questioning * * * may be made in the absence of any individualized suspicion at reasonably located checkpoints"). Nevertheless,

we can discern the possibility of a difference in the quantum of "individualized suspicion" necessary for a stop and detention of a vehicle on a highway to be "reasonable" as compared to referral of a vehicle stopped at a roadblock to a secondary area.

We now turn to the question of whether there was reasonable suspicion in this case justifying the further detention of defendant at the checkpoint. In deciding the issue, we examine the totality of circumstances at the time of the detention. *See United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (to decide whether border patrol agents had reasonable suspicion to stop vehicle, court must examine the totality of circumstances at the time of the stop); *United States v. Monsisvais*, 907 F.2d 987 (10th Cir.1990) (same; agent must have objective basis for suspecting criminal activity). We must determine whether the facts available to the agent in this case would warrant a person of reasonable caution to believe the action taken was appropriate. *See State v. Cohen.* Factors relevant to the inquiry include the characteristics of the area in which the checkpoint is located (proximity to the border, the usual traffic pattern on the road in question), the agent's previous experience with alien or contraband traffic, the driver's behavior and appearance, and aspects of the vehicle itself. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 884–85, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975) (discussing roving border patrol stop).

■ According to the parties' stipulated facts in this case, the only individualized fact known by the agent that could possibly have raised his suspicions was the misplaced spare tire. Nothing in the record indicates the driver or his passenger were nervous or displayed unusual behavior of any sort. The residency documents produced by defendant and his passenger were proper. No other potentially suspicious factor is mentioned in the stipulated facts. Based solely on the misplacement of the spare tire, the agent directed defendant to the secondary area, and defendant and his passenger were asked to exit the vehicle

while a dog sniff was performed. We do not believe the out-of-place spare tire, standing alone, was such a suspicious circumstance as to justify this continuing detention of defendant. *Cf. United States v. Monsisvais* (reasonable suspicion for roving border patrol stop not present where only indicators of illegal activity were heavily loaded camper with out-of-state license plates traveling north on highway that bypasses checkpoint—all factors just as consistent with innocent conduct as with illegal activity).

A misplaced spare tire may indeed heighten an officer's or agent's suspicion regarding a vehicle. *See United States v. Brignoni–Ponce* ("aspects of vehicle" factor includes fact that vehicle may have a large spare tire well capable of concealing a person); *United States v. Petty*, 601 F.2d 883 (5th Cir.1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1649, 64 L.Ed.2d 237 (1980) (fact that spare tire, jack, and lug wrench were in back seat of car instead of usual location was relevant to probable cause inquiry); *United States v. Flores*, 531 F.2d 222 (5th Cir.), *cert. denied*, 429 U.S. 976, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976) (stating that spare tire being in back seat of car could be an indicator that something is hidden in trunk; many other suspicious factors present in the case). Having a misplaced spare tire is also, however, consistent with entirely innocent behavior.

More importantly, the stipulation contains no information about the agent's experience with spare tires—we do not know how often he sees spare tires out of place, how often that circumstance turns out to be an indicator of illegal conduct, or whether there was any other factor that caused him to be suspicious of defendant's vehicle. We also are not told whether the spare tire well was large enough to hide a person or whether it had been covered so as to conceal a person, if hidden. Additionally, nothing in the record shows that the diversion to the secondary area was for the purpose of checking for illegal aliens. The dog alerted to the presence of drugs. Perhaps the animal was trained to alert for people, but the record does not show that. Based on this, the diversion to secondary was not proper. Although the agent's observation regarding the spare tire could justify further questioning, it could not justify the additional detention here.

## CONCLUSION

Individualized or reasonable suspicion was needed to detain defendant after the original reasons for the stop had expired. The stipulated facts were insufficient to support a finding of reasonable suspicion in this case. Therefore, the evidence discovered during the wrongful detention should have been suppressed. The decision of the trial court is reversed and the case remanded.

IT IS SO ORDERED.

MINZNER and HARTZ, JJ., concur.