847 P.2d 751

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**James BALDONADO, Jr., and Dolores Rodrigues, Defendants–Appellants.**

**Nos. 13534, 13529.**

Court of Appeals of New Mexico.

Dec. 30, 1992.

Certiorari Denied Feb. 8, 1993.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Christopher Bulman, Asst. Appellate Defender, Santa Fe, for defendants-appellants.

## OPINION

PICKARD, Judge.

These consolidated cases raise the question of whether there is a seizure, as a matter of law, whenever the police pull up behind a stopped car and turn on their flashing lights. We hold that there is not, but because the trial court may not have appreciated the principles governing the law of stops and seizures in its denial of defendants' motions to suppress, we remand these cases for redetermination in light of our clarification of the applicable law.

The facts are that the officer noticed a car, with its headlights on and engine off, parked on the side of a street in front of a vacant lot in a business district at about one in the morning. One of the defendants was leaning into the back seat of the car. The officer thought the car had broken down or that something suspicious was occurring, so he pulled up behind the car and turned on his emergency lights.

The evidence was disputed concerning whether defendants were free to leave. The officer repeatedly testified that they were free to leave at all times. On the other hand, he also testified that they were not free to leave for a few minutes after he turned on his lights, and he was impeached with prior testimony in which he said that persons stopped are not free to leave when his lights are engaged.

The officer approached defendants' car and looked inside. He saw two open containers of alcohol and a stereo receiver. He was told that the car had run out of gas. He suspected that one defendant was intoxicated. He obtained permission to search the car and check the serial number on the stereo. He asked defendants to pour out the remaining alcohol before defendants left to get gas. A short time later, the officer learned that the stereo had been stolen in a recent burglary. The officer then found defendants and arrested them.

Although we have written the above paragraph in sentences indicating a time sequence, the testimony was not at all clear that the time sequence was as set out above. Neither party questioned the officer about exactly what he said and did as he approached the vehicle. Defendants did not testify.

Both the applicable law and the standard of review to be utilized in this case have recently been set forth in *State v. Lopez*, 109 N.M. 169, 783 P.2d 479 (Ct. App.), *cert. quashed*, 109 N.M. 131, 782 P.2d 384 (1989). The law is that a person is seized within the meaning of the fourth amendment (and thus the police must justify the seizure by probable cause or reasonable suspicion) when, in view of all the circumstances, the person is accosted and restrained such that a reasonable person would have believed he or she was not free to leave. *Id.* at 170, 783 P.2d at 480. The standard of review is that if different inferences can be drawn from the facts, the question of whether a person is accosted and restrained in such a way is a factual question subject to the substantial evidence standard. *Id.* This standard is significantly different from the "independent judgment" standard set forth in *People v. Bailey*, 176 Cal.App.3d 402, 222 Cal.Rptr. 235 (Ct.App.1985), relied on in the dissent.

Defendants argue that the *Lopez* standard of review essentially abrogates the de novo review that they contend is required whenever there is not a direct conflict in the testimony. The state argues the evidence in this case as though no question of law whatsoever is involved. We disagree with both parties' extreme positions and take this opportunity to clarify *Lopez*'s dual standard of review.

*Lopez*'s statement of the standard of review is not, as defendants contend, an "irrational" and "artificial" thwarting of the appellate court's proper role. Rather, it is a simple recognition that trial courts are in a better position than appellate courts to find the facts, and that such fact-finding frequently involves determining which inferences to draw.

For example, in this case, the testimony of the officer involved was internally contradictory as to whether defendants were free to leave. As an initial factual question, it was for the trial court to determine whether, in the officer's mind, defendants were free to leave or not. Of course, what is in the officer's mind is not determinative. The issue under *Lopez* is how a reasonable person in defendants' circumstances would have felt. Nonetheless, people have nonverbal ways of communicating what is on their minds, and a trial court could find, based on what is on an officer's mind together with surrounding circumstances, that if the officer believes that the defendants are not free to leave it may be more likely that the defendants would feel that they are not free to leave. The contrary would also be true: if the trial court finds that the officer believed that the defendants were free to leave, it may be more likely that they would feel they are free to leave.

The above discussion shows that factual conflicts are to be determined by the trial court. It further shows that even when the facts do not appear to be in dispute, it is possible that different inferences may be drawn from the facts. When such is the case, it is for the trial court to decide the facts, including the drawing of inferences. *See State v. McGhee*, 103 N.M. 100, 103, 703 P.2d 877, 880 (1985). Defendants' complaint that this could result in two disparate decisions on the same facts is essentially a complaint about the nature of appellate review. Yet, it is well established that it is inherent in the nature of review that different trial courts may reach different conclusions, and that does not compel a reversal. *State v. Anderson*, 107 N.M. 165, 168, 754 P.2d 542, 545 (Ct.App.1988). Defendants' complaint that different conclusions should not be allowed on the same facts in constitutional cases ignores the fact that there are rarely cases with identical facts.

Nonetheless, it appears to us that the trial court in this case may have misapplied the law in applying it to the facts as found. Actually, we do not know exactly what facts the trial court found. Defendants'

suppression motion was denied in an order without stating reasons. Additionally, we do not even know exactly on what theory the trial court denied the motion to suppress. The state had argued that (1) there was not a stop; (2) if there was, it was supported by reasonable suspicion; and (3) even if not, defendants freely consented to the search under permissible circumstances. In cases such as this, in which we do not know the trial court's rationale, particularly when the evidence supporting the trial court's decision is as thin as it is here, it is appropriate to remand to the trial court for a redetermination in accordance with the law that we are clarifying today. *See, e.g., State v. Tindle,* 104 N.M. 195, 200, 718 P.2d 705, 710 (Ct.App.1986). We shall explain why we believe the evidence supporting the trial court's decision is thin after we discuss the applicable law.

■ Both parties cite cases involving the use of flashing lights by police officers. To the extent that defendants' cases involve moving vehicles that stopped in response to the flashing lights, we believe those cases are distinguishable and of little assistance. To the extent that the state's cases involve pedestrians unaware that the flashing lights were intended to be signalling them, they too are distinguishable and of little assistance.

Two cases, however, deserve more discussion. They are *State v. Walp,* 65 Or. App. 781, 672 P.2d 374 (1983), and *State v. Stroud,* 30 Wash.App. 392, 634 P.2d 316 (1981), *review denied,* 96 Wash.2d 1025 (1982). Both involved factual circumstances similar to those here in that the officers pulled up behind stopped vehicles and activated their emergency lights. *Walp* was a defendant's appeal in which the trial court's ruling that there was no seizure was reversed. *Stroud* was a state's appeal in which the trial court's ruling that there was a seizure was affirmed. While the procedural posture of *Walp* better supports defendants' position here, we are not impressed with *Walp*'s reasoning or result and do not adopt it in New Mexico. While the procedural posture of *Stroud* does not support defendants'

position as much, we are more impressed with its reasoning and commend it to the trial court on remand here.

*Walp* involved a woman in a stopped car. An officer thought the woman was having mechanical difficulty and turned on his lights to investigate. *Walp* was based in part on a statute making it a crime to drive after police lights are activated. However, to the extent that it holds that, as a matter of law, a stop that must be supported by at least reasonable suspicion occurs whenever lights are activated, regardless of the officer's motive and actions and regardless of facts supporting a belief that the stopped driver is free to leave, we disagree with it.

We can conceive of many situations in which people in stopped cars approached by officers flashing their lights would be free to leave because the officers would be simply communicating with them to ascertain that they are not in trouble. Under such circumstances, depending on the facts, the officers may well activate their emergency lights for reasons of highway safety or so as not to unduly alarm the stopped motorists. We are loathe to create a situation in which officers would be discouraged from acting to help stranded motorists, from acting in the interest of the safety of the travelling public, or from acting in the interest of their own safety.

On the other hand, we find it hard to conceive of a situation where officers activate their emergency lights to investigate a suspicious situation and approach the situation with many accusatory questions in which a reasonable stopped motorist would feel free to leave. We view *Stroud* as an example of such a case. The *Stroud* court relied on a statute similar to New Mexico's resisting arrest statute. The court concluded that the defendants there were seized because they arguably could have been charged under the statute had they left. The appellate court agreed with the trial court that this was a show of authority sufficient to convey to a reasonable person that departure was not a realistic alternative. While we have a similar statute in New Mexico, NMSA 1978, Section 30–22–1(C) (Repl.Pamp.1984), we do not believe

that it would apply to a driver already stopped when the officer approached. This statute proscribes refusing to bring the vehicle to a stop. It does not apply to stopped vehicles. (Of course, if the stopped driver knows that the officer is trying to effectuate an arrest, then NMSA 1978, Section 30–22–1(B) (Repl.Pamp.1984) would apply if the driver tried to leave.)

■ As indicated above, the trial court has a difficult and sensitive task on remand. It should focus on the question set forth in *Lopez:* whether, due to physical restraint or a show of authority, a reasonable person in defendants' situation would feel free to leave under all of the circumstances of the case. The trial court should consider the officer's subjective intent only to the extent that it would bear on the beliefs of reasonable people in defendants' shoes. The trial court should consider the statute, § 30–22–1(C), to the same extent. The trial court should consider the sequence of the officer's actions and determine how that would bear on the beliefs of reasonable people being confronted in the same manner.

By way of example, we believe that a trial court should ordinarily find a stop that must be justified by reasonable suspicion whenever officers pull up behind a stopped car, activate their lights, and approach the car in an accusatory manner, asking for license and registration and an account of the occupants' activities. On the other hand, a trial court should ordinarily find no stop whenever officers pull up behind a stopped car, activate their lights, and approach the car in a deferential manner asking first whether the occupants need help.

■ Finally, we leave to the trial court's discretion the choice of whether or not to take any additional testimony. While there are many questions on which the evidence could have been more clear, the trial court may wish to find on these questions against the party with the burden of proof instead of taking new evidence. In this case, on the issue of whether there was a stop that rises to the level of a seizure, it appears that defendants bear the burden of proof. *See* 4 Wayne R. LaFave, *Search and Seizure* § 11.2(b) & n. 45.3 (2d ed. 1987 & pkt. part 1992) (citing *Russell v. State,* 717 S.W.2d 7 (Tex.Crim.App.1986) (en banc)). This is consistent with New Mexico law to the effect that defendants have the burden to raise an issue as to their illegal search and seizure claims. *See State v. Gardner,* 95 N.M. 171, 175, 619 P.2d 847, 851 (Ct.App.1980), *cert. denied,* October 6, 1980. Once they have done so, the burden shifts to the state to justify the warrantless search. *See State v. Mann,* 103 N.M. 660, 663, 712 P.2d 6, 9 (Ct.App. 1985), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986).

■ The state contends that even if a stop amounting to a seizure is found, it was supported by ample reasonable suspicion and defendants consented to the search of the car in any event. We disagree. The degree of suspicion in this case was no more reasonable than that we held·to be insufficient in *State v. Galvan,* 90 N.M. 129, 560 P.2d 550 (Ct.App.1977). For the consent to be valid, it must be attenuated from seizure. *State v. Bedolla,* 111 N.M. 448, 456, 806 P.2d 588, 596 (Ct.App.), *cert. denied,* 111 N.M. 416, 806 P.2d 65 (1991). The facts of this case show no attenuation. *See id.*

We reverse and remand this case for the trial court to redetermine the issues on the motion to suppress in accordance with the views expressed herein.

IT IS SO ORDERED.

ALARID, C.J., concurs.

APODACA, J., dissents.

APODACA, Judge, dissenting.

I respectfully dissent from the majority's opinion and would hold as a matter of law that, when the police officer activated his emergency lights, a reasonable person would not have believed he or she was free to leave. Consequently, I would hold that, as a matter of law, defendants were seized within the meaning of the Fourth Amendment at the moment the officer activated his emergency lights. The majority, on the other hand, has apparently opted not to

determine whether, as a matter of law, the officer's initial encounter with defendants was lawful or unlawful, and appears to hold that the officer's activation of his emergency lights is simply one factor to be considered in determining whether a reasonable person would feel free to leave.

Although I would hold that defendants were seized, I nonetheless readily concede that the officer's initial stop was reasonable within the Fourth Amendment. Our inquiry should not end there, however. In my view, both parties' briefs concentrate an inordinate amount of discussion on the legality of the initial stop. The majority, too, seems to suggest that the only relevant inquiry is the validity of the initial stop. Instead, the focus in this appeal should be on the validity of the continued detention, and not on the validity of the initial stop. The parties, however, do not address the issue of whether (and at what point) the initially lawful stop or detention might have become unreasonable and thus in violation of the Fourth Amendment. If the initially lawful stop became unreasonable, defendants' consent to search the car would have been tainted by the illegal detention and the evidence seized should have been suppressed. Consequently, the focus should be on whether the officer had reasonable suspicion to continue to detain defendants once he had learned that defendants were parked alongside the road because they had run out of gasoline. Based on the facts presented in this appeal, I would hold that no reasonable suspicion arose to justify the continued detention. It follows that defendants' motions to suppress should have been granted.

It is true that not all police-citizen encounters are seizures. *State v. Montoya,* 94 N.M. 542, 543, 612 P.2d 1353, 1354 (Ct. App.1980) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). " 'Only when the officer, by means of physical force or *show of authority,* has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' " *Id.* (quoting *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16) (emphasis added). "Only when such restraint is imposed is there any foundation whatever for

invoking constitutional safeguards." *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). In *United States v. Rose,* 889 F.2d 1490, 1493 (6th Cir.1989), the Sixth Circuit Court of Appeals noted:

What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary with the police conduct at issue and the setting in which the conduct occurred. This test, while flexible enough to be applied to a wide range of police conduct, requires consistent application to every police encounter regardless of the particular individual's response to the policemen's actions. This "reasonable person" standard further ensures that the scope of the fourth amendment protection does not vary with the state of mind of the particular individual involved. The subjective intent of the officers is relevant to an assessment of the fourth amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted. [Citations omitted.]

In similar fact situations, other jurisdictions have concluded that a police officer's use of his or her car's emergency lights is a sufficient show of authority that a reasonable person would not feel free to leave and is therefore seized at the moment the officer turns on the lights. *People v. Bailey,* 176 Cal.App.3d 402, 222 Cal.Rptr. 235 (1985); *State v. Walp,* 65 Or.App. 781, 672 P.2d 374 (1983); *State v. Stroud,* 30 Wash. App. 392, 634 P.2d 316 (1981), *review denied,* 96 Wash.2d 1025 (1982). I agree with the rationale of these persuasive authorities, which, in my view, cannot be distinguished.

In *Bailey,* the defendant was parked in a parking lot of a closed department store. The area was often the location of illegal drug use. A police officer wanted to check what the defendant was doing. He pulled the police car behind the defendant's car and activated his emergency lights. The officer approached the automobile and smelled marijuana. He asked for permission to search, which the defendant granted. Marijuana was subsequently found.

*Bailey,* 222 Cal.Rptr. at 236. The California Court of Appeal posed the issue as "the validity of a consent to search given in the presence of an officer who has directed a red light toward appellant's vehicle." *Id.* The court stated:

A reasonable person to whom the red light from a vehicle is directed would be expected to recognize the signal to stop or otherwise be available to the officer. Any reasonable person in a similar situation would expect that if he drove off, the officer would respond by following with red light on and siren sounding in order to accomplish control of the individual * * *.

The circumstances thus show an exercise of official authority such that [the defendant], under the standard of a reasonable person, would have believed he was not free to leave. He was seized, under the detention category of contact, without the necessary basis therefor, and his consent was therefore involuntary.

*Id.* at 237. The court additionally concluded that "[t]he show of authority began when the red light went on." *Id.*

Additionally, the courts in *Walp* and *Stroud* considered statutes very similar to our statute, NMSA 1978, Section 30–22–1 (Repl.Pamp.1984). That statute states:

Resisting, evading or obstructing an officer consists of:

    \*     \*     \*     \*     \*     \*

C. willfully refusing to bring a vehicle to a stop when given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other signal, by a uniformed officer in an appropriately marked police vehicle[.]

    \*     \*     \*     \*     \*     \*

Whoever commits resisting, evading or obstructing an officer is guilty of a misdemeanor.

In *Walp,* as police officers followed the defendant's vehicle in their car, the defendant voluntarily pulled over to the side of the road and stopped. The officers activated their emergency lights and stopped behind her. They had no suspicion of illegal activity. *Walp,* 672 P.2d at 374–75. The applicable statute in Oregon made it an offense to continue to drive once a police officer activated his emergency lights. *Id.* at 375 n. 1. The Oregon Court of Appeals concluded that "[a] reasonable person would not feel free to drive away once the officer turned on the emergency lights. Use of the overhead lights was a sufficient show of authority." *Id.* at 375. The court thus held that the motion to suppress should have been granted.

The facts of *Stroud* are even more similar to the facts in this appeal. The defendant there was a passenger in a vehicle parked late at night in an industrial area. Although the car was legally parked and the officers saw no illegal activity, they nonetheless turned on their flashing lights, put their headlights on bright, and pulled up behind the parked vehicle. *Stroud,* 634 P.2d at 317. The trial court suppressed the evidence subsequently seized and the reviewing court affirmed. The court noted that, under Washington law, "[h]ad the operator of the vehicle attempted to drive off after being so signaled, he could arguably have been charged with a misdemeanor." *Id.* at 318. As a result, the court reasoned, the passenger was equally restrained. Additionally, "[u]nder the totality of the circumstances, the officers' attempt to summon the occupants of the parked car with both their emergency lights and high beam headlights constituted a show of authority sufficient to convey to any reasonable person that voluntary departure from the scene was not a realistic alternative." *Id.* at 319. Having determined that the seizure occurred when the officers pulled in behind defendant's vehicle, the *Stroud* court then considered whether the seizure was reasonable and concluded that, because the stop was predicated only on the facts that the car was parked in a high-crime area and that this was unusual, though not unlawful, the stop was unreasonable and the evidence was properly suppressed. *Id.* at 320.

I agree with most of the reasoning and the results in *Bailey, Walp,* and *Stroud.* The majority attempts to distinguish *Walp* and *Stroud* and to minimize the effect of

Section 30–22–1(C) by concluding that the statute does not apply to a vehicle that is already stopped when the officer pulls up behind it with the emergency lights flashing. However, motorists in New Mexico know that they are required by law to stop when signalled by a police officer's emergency lights. It would be reasonable for a parked motorist to conclude in such a situation that, if he or she attempted to drive off after an officer had signalled with his or her emergency lights, the officer would follow and definitely signal for the motorist to pull over. It is illogical to conclude that Fourth Amendment protections would apply if the motorist attempted to leave the scene, but would not if he or she opted to remain parked.

However, I disagree with defendants and with the conclusions of those cases holding that the initial stop is deemed illegal because not based on reasonable suspicion. The overriding goal of the Fourth Amendment is to assure that an individual's reasonable expectation of privacy and security is not subject to arbitrary invasions solely at the discretion of police officers. *Delaware v. Prouse,* 440 U.S. 648, 654–55, 99 S.Ct. 1391, 1396–97, 59 L.Ed.2d 660 (1979); *see also United States v. Brignoni–Ponce,* 422 U.S. 873, 882, 95 S.Ct. 2574, 2580–81, 45 L.Ed.2d 607 (1975). Generally, the Fourth Amendment requires that a seizure be based on specific objective facts indicating that society's legitimate interests require the seizure of the specific individual or that the seizure must be carried out pursuant to a plan embodying explicit neutral limitations on the conduct of individual officers. *See Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401. However, the touchstone of Fourth Amendment law is reasonableness. *See City of Las Cruces v. Betancourt,* 105 N.M. 655, 657, 735 P.2d 1161, 1163 (Ct. App.) ("The essence of the fourth amendment prohibition against unreasonable searches and seizures is to safeguard the privacy and security of individuals against arbitrary invasion by governmental officials by imposing a standard of reasonableness upon the exercise of those officials' discretion."), *cert. denied,* 105 N.M. 618, 735 P.2d 535 (1987). The reasonableness of

government officials' actions are determined by balancing the gravity of the governmental or public interest, the degree to which the concern is advanced, and the degree of interference with personal liberty. *Id.* at 658, 735 P.2d at 1164. Thus, officers may briefly detain individuals in the absence of reasonable suspicion in certain circumstances. *See, e.g., id.* at 660, 735 P.2d at 1166 (upholding validity of sobriety roadblocks pursuant to neutral criteria); *see also Brignoni–Ponce,* 422 U.S. at 881, 95 S.Ct. at 2580 (Fourth Amendment allows properly limited "search" or "seizure" on facts that do not constitute probable cause to arrest or to search in certain circumstances).

Although an initial brief stop may be reasonable, an officer's subsequent action may make the continued detention unreasonable and therefore unlawful. *State v. Estrada,* 111 N.M. 798, 802, 810 P.2d 817, 821 (Ct.App.1991) (holding that once original purpose of a lawful checkpoint stop has been satisfied, further detention of a vehicle or person must be based on at least reasonable suspicion); *United States v. Rivera,* 867 F.2d 1261, 1263 (10th Cir.1989) ("[E]ven if the initial stop and investigation are valid, the officer's action may at some point become unreasonable and comprise an unlawful detention."); *United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir. 1988) (detention for routine traffic stop limited to time necessary to check license and vehicle registration, run computer check, and issue citation, unless officer in that time develops reasonable suspicion of a serious crime). I agree that it is not unreasonable for an officer to approach a stranded motorist and inquire whether the motorist needs assistance. However, in the absence of reasonable suspicion, it is not reasonable to detain individuals for longer than is needed to make the inquiry and to offer any necessary assistance.

The state nevertheless argues that, even if the stop was illegal, defendants' voluntary consent validated the search of the car. However, the state fails to recognize that, even if the initial stop was reasonable and therefore valid, the subsequent search

was not necessarily valid unless the continued detention was also valid. *See Estrada,* 111 N.M. at 801, 810 P.2d at 820; *cf. State v. Bolton,* 111 N.M. 28, 42, 801 P.2d 98, 112 (Ct.App.) (holding that additional facts obtained during initial detention provided at least reasonable suspicion to support continued detention of defendants at roadblock to check licenses and registration), *cert. denied,* 111 N.M. 16, 801 P.2d 86 (1990). This Court has stated:

> Consent will validate a warrantless search and seizure. The voluntariness of a consent to search is a question of fact for the trial court. On appeal, we determine whether the evidence, viewed in the light most favorable to the trial court's finding, substantially supports that finding. The determination of voluntariness involves a three-tiered analysis: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress and coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights. In warrantless search situations, the state has the heavy burden of proving by clear and convincing evidence the absence of duress, coercion, or other factors that would vitiate the voluntary nature of the consent.

*State v. Lara,* 110 N.M. 507, 514–15, 797 P.2d 296, 303–04 (Ct.App.) (citations omitted), *cert. denied,* 110 N.M. 330, 795 P.2d 1022 (1990). In this appeal, the state had the burden of producing facts sufficient to show that the continued detention and search were valid. *See State v. Vasquez,* 112 N.M. 363, 366, 815 P.2d 659, 662 (Ct. App.), *cert. denied,* 112 N.M. 388, 815 P.2d 1178 (1991). The majority would remand for, I assume, further fact-finding on the issue of whether defendants were seized and, if so, whether the seizure tainted the consent to search the car. However, since I would hold that defendants were seized at the time the officer activated his emergency lights, I conclude that remand for such a purpose is unnecessary.

Also, because the parties agree on the relevant facts, I believe this Court can determine as a matter of law that the continued detention of defendants was unlawful because it was not based on reasonable suspicion. *See Estrada,* 111 N.M. at 801, 810 P.2d at 820 (reviewing parties' stipulated facts to determine if reasonable suspicion justified continued detention once purpose of checkpoint accomplished). As the majority acknowledges, no evidence indicated that the officer had reasonable suspicion of criminal activity to support additional detention and investigation. I would therefore reverse the trial court's denial of the motions to suppress.

Additionally, I am not clear on what the majority means by its statement that, "on the issue of whether there was a stop that rises to the level of a seizure, it appears that the defendants have the burden of proof." If the majority is stating that defendants have the burden of producing sufficient evidence to raise the issue of an illegal search and seizure, *see State v. Gardner,* 95 N.M. 171, 175, 619 P.2d 847, 851 (Ct.App.1980), then I agree. However, if the majority means that defendants have the burden of proving that there was a seizure, *see Russell v. State,* 717 S.W.2d 7, 9–10 (Tex.Crim.App.1986) (en banc), I am not certain that that is the law in New Mexico. *Cf. State v. Mann,* 103 N.M. 660, 663, 712 P.2d 6, 9 (Ct.App.1985) (stating that a defendant is required to put in issue facts alleging that officers conducted a warrantless search and seizure before burden shifts to state to produce evidence the search and seizure fell within an exception to Fourth Amendment requirements), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986). Nonetheless, whether that is or is not the law in New Mexico, I believe that, under the facts of this appeal, defendants met their burden by placing in issue facts demonstrating that the officer used his emergency lights. The issue is then the legal significance of the officer's use of the emergency lights.

I recognize that my proposed holding might require a reconsideration or clarification of this Court's holding in *State v. Lopez,* 109 N.M. 169, 783 P.2d 479 (Ct. App.), *cert. quashed,* 109 N.M. 131, 782 P.2d 384 (1989), on which the majority re-

lies. In *Lopez*, this Court recognized that, under *Mendenhall*, "as a matter of law, a person is seized when the facts show accosting and restraint such that a reasonable person would believe he is not free to leave." *Id.* at 170, 783 P.2d at 480. *Lopez* then concluded that "the question of whether defendant was seized, thereby invoking fourth amendment protections, is a legal question. However, whether defendant was accosted and restrained such that a reasonable person in the same circumstances would believe he was not free to leave is a factual question." *Id.* The majority interprets this language as meaning that, if different inferences can be drawn from the facts, the district court's ruling concerning whether a reasonable person would have felt free to leave is reviewed under a substantial evidence standard. Additionally, the majority notes that the trial court is in a better position to determine the facts and that this fact-finding function includes drawing inferences from the facts.

I question this interpretation of *Lopez*. First of all, it appears to me that the two questions, as described in *Lopez*, are actually the same question in that, if the answer to the question "would a reasonable person have not felt free to leave under these facts" is "yes," then the legal conclusion is that the person has been seized. Second, I question the majority's categorization of the legal conclusion of whether, under the facts as found by the trial court, a reasonable person would have felt free to leave as a factual "inference" drawn by the trial court to which this Court should defer. The issue is not whether a particular person felt free to leave in certain circumstances; I readily agree that deference should be accorded the trial court's finding on such an issue. I further agree that deference should be accorded to the trial court's determination on what the circumstances were. However, under *Mendenhall*, the issue is whether a reasonable person in the circumstances *as found by the trial court* would have felt free to leave. The "reasonable person" standard is intended to ensure that the scope of Fourth Amendment protection does not vary with the state of mind of the individual involved. *Rose*, 889 F.2d at 1493. The legal effect of the facts is freely reviewable by this Court, and labeling them an "inference" should not make the trial court's legal conclusion any less reviewable. *See Edens v. New Mexico Health & Social Servs. Dep't*, 89 N.M. 60, 62, 547 P.2d 65, 67 (1976) (whether a determination is a finding of fact or conclusion of law is a question of law and therefore freely reviewable). To do otherwise, in my opinion, would make the scope of Fourth Amendment protection variable.

The majority apparently considers the officer's use of the emergency lights as simply one factor that the trial court should consider in determining whether defendants were seized. I disagree. I, for one, cannot conceive of any possible factual scenario in which any motorist, no matter the reason why he or she was stopped or parked alongside any roadway and regardless of how relieved a stranded motorist may feel upon seeing the officer, would feel free to leave after a law enforcement officer has stopped with the emergency equipment activated. It simply does not make sense that the motorist would believe he or she was at liberty to move on without explanation. I also do not believe that the holding I propose would dissuade officers from stopping to help stranded motorists or to place themselves in danger by not signalling that they were law enforcement officers. Instead, such a holding would clearly set the constitutionally permissible limits on an officer's ability to intrude on an individual's privacy in such situations when reasonable suspicion of criminal activity is lacking. Additionally, I recognize that emergency lights are used for many purposes. However, the fact that the emergency lights may be used for purposes other than demonstrating police authority does not mitigate the fact that they do indeed demonstrate police authority. This Court should recognize this premise and issue rulings based on that premise, so that the courts, government officials, and the public will have clear guidelines to follow.